No. 39,066

Catherine Aleph Christman Reyburn, et al., *Appellees,* v. George Fabrique Christman, *Appellant.*

(254 P. 2d 837)

Opinion filed March 24, 1953.

*H. W. Goodwin* and *L. M. Kagey,* both of Wichita, argued the cause and *M. L. Hamilton,* of Wichita, was with them on the briefs for the appellant.

*P. J. Warnick,* of Wichita, argued the cause, and *Henry E. Martz, Alan B. Phares, Clyde M. Simon,* and *Fred J. Gasser,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Harvey, C. J.: This was an action by tenants in common for the partition of certain real property. The appeal is from an order of the court refusing to direct the commissioners to set off certain property to defendant and from an order overruling defendant's exceptions to the report of the commissioners. The facts, not in controversy, may be stated briefly as follows: A. J. Christman, an early settler and longtime resident of Wichita, accumulated a substantial amount of real property. Some of this was commercial buildings in the business part of the city and much of it was land

which he had platted into lots and blocks. He died testate in 1944, survived by his widow, Catherine A. Christman, and his eight children. By his will he devised and bequeathed to his wife for her enjoyment and use all of his property for and during the term of her natural life, with remainder to the eight children of the marriage, share and share alike. The widow died March 16, 1952, and on May 26, 1952, seven of the children joined in filing a petition for the partition of the real property owned by A. J. Christman at the time of his death and which had not previously been disposed of. They alleged the pertinent facts just stated and further alleged that each of the plaintiffs and the defendant owned an undivided one-eighth interest in and to the property and prayed for the partition of the property in accordance with law. Of the seven plaintiffs two of them are residents of California, one of Phoenix, Arizona, and one of Miami, Florida. Three of them reside in Wichita, but one of those is temporarily stationed at Battle Creek, Michigan. On August 11, 1952, defendant filed an answer in which he admitted the names and residences of the parties and that the plaintiffs and the defendant are each the owner of an undivided one-eighth interest in the property; alleged some of the property was inaccurately described in the petition, and stated the correct description. The prayer was that the court adjudicate and determine the ownership of the real property and that the same be partitioned according to law. On the 29th day of October, 1952, the cause came on for hearing, the parties appearing by their respective counsel. The court found the allegations of the petition were true and that the parties, plaintiffs and defendant, are tenants in common of the real estate described in the petition as amended and corrected by defendant's answer and that the same is subject to partition. The court further found that the plaintiffs and defendant are the owners in fee simple of an undivided one-eighth interest in the real property and that commissioners should be appointed to make partition as provided by law. The court appointed three named persons to make partition of the real estate by the court "if such partition can be made without manifest injury; but if, in the opinion and judgment of said commissioners, said partition cannot be made, said commissioners shall make a valuation and appraisement of the property and shall value each tract separately."

On November 5, 1952, the defendant filed a motion in which he recited his fractional interest and that of each of the plaintiffs in

the property to be one-eighth; alleged that for several years last past he and the mother of the parties had carried on the business of selling various unimproved lots and tracts and managing the downtown commercial rental properties owned by the parties; that he is a licensed real-estate broker; that he recently submitted to plaintiffs advantageous contracts of sale of portions of the property, which were rejected by plaintiffs; that it would be advantageous to defendant from the standpoint of income taxes if certain real property would be allotted to him by the commissioners, and that while the commissioners might find it to be impossible to partition the real property involved into eight portions without manifest injury, the commissioners could, without loss or damage to plaintiffs, allot to him approximately one-eighth in value of the unimproved residential lots and could allot to him approximately one-eighth in value of the lots in A. J. Christman Third Addition bordering on Kellogg Street, which had a potential value as commercial property, and could allot to the defendant approximately one-eighth of the value of the commercial rental property, and that the court could then make such orders as were necessary to do equity between the parties to the action, and moved the court to issue written instructions to the commissioners to make allotments to the defendant in accordance with the above statement. This motion came on for hearing before the court and counsel. The court directed the commissioners to make an informal appraisal of all the property involved and submit the same to the court and the attorneys for the parties in order that the court, before ruling on the motion, should have the benefit of such appraisement. That was done and the commissioners submitted an informal appraisal of the property. There appears to have been an informal discussion between the court and counsel in consideration of this informal appraisal, of which no permanent record was kept, and on December 23, 1952, the court denied defendant's motion to allot certain properties to him. The report of the commissioners was filed on December 31, 1952. This showed the commissioners had taken their oath on November 6, 1952, and recites:

"Pursuant to the Orders of the Court, we went upon and viewed the real estate described in the Order, the same being to-wit (describing all the real estate). . . .

"After careful examination of the premises and due consideration, we conclude that partition of the said real estate could not be made without manifest injury for the following reasons, to-wit:

"(a) That said properties are so situated and of such nature, some being commercial and rental properties, other properties being undeveloped real property, that partition thereof among the eight owners thereof could not be made without manifest injury.

"(b) That the valuations of said properties differ to such an extent that they cannot be equally divided up by partition without manifest injury.

"We therefore proceeded to make an appraisement and valuation of the said properties and the appraisement and valuation so made follows, to-wit:  .  .  ."

This was followed by detailed descriptions of the property, all in Wichita, which we summarize. The Christman home at 1227 North Topeka was appraised at $18,000, the business property at 300 North Broadway at $160,000, the business property at 114 North Broadway at $65,000, the business property at 218 North Broadway at $60,000, and the business property at 125 North Santa Fe at $24,000. This was followed by a detailed list of 116 lots or tracts, each separately appraised, at values which varied from $450 to $18,-750. The total appraised value of the real estate was $503,975. This made the appraised value of the share of each of the parties to the action slightly under $63,000. Thereafter defendant filed exceptions to the report of the commissioners which contained an argument as to how the property might be divided in kind so that he could get the particular property he wanted, and moved the court to set aside the report of the commissioners and to refer the matter back to them with directions to allot portions of the real property to defendant, as suggested. At the final hearing of defendant's motion for directions to the commissioners to allot him certain property and his exceptions to the report of the commissioners, held on January 6, 1953, at which all parties were represented, defendant, called as a witness, testified:

"I would like to have Lots 1 to 17 inclusive, in Block A, and Lots 1 to 8 inclusive in Block B allocated to me.  .  .  .  In the Second Addition I would like to have the South 150 feet of Block G allocated to me. and enough of the remaining lots so that the total allocated would amount to somewhere near one-eighth of the total appraisal."

Asked to state his reasons, other than sentimental ones, he answered:

"If this property that I have elected to take here is awarded to me with the exception of these residential lots, the majority of the residential lots, with the exception of one, I would build a home on, would be sold as the rest of it isn't revenue property, but I will attempt to convert it into revenue property. On this lot at Lincoln and Woodlawn, that is that 150 feet in block G, I already have made tentative arrangements to put a filling station on there

for one of the major oil companies and make a nice return, that is what I want to do with this property, is to convert it to revenue property, and if it is awarded to me I am free from income tax on it as I am advised. If I go into a public sale and buy it I would have to pay income tax on it."

Robert M. Kaufman, called as a witness by defendant, testified he was a certified public accountant and engaged principally in the fields of state and federal income taxes. The substance of his testimony was that if the property were sold at its appraised value and the proceeds divided among the eight owners each of them would have income taxes in a sum of between $11,500 and $12,500, but that if the property were divided in kind they would not be liable for income taxes. This statement was questioned by counsel and may have been weakened somewhat by cross examination. After the testimony and argument of counsel were completed the court made the following statement:

"The problem that is bothering the Court is this; that here we have an appraised valuation of approximately a half a million dollars out of which certain properties could not be allocated. In the opinion of the Court the property over here on Broadway that is appraised at $160,000.00 that could not be set aside to any of them. Likewise about the two down town buildings at $65 and $60 thousand, they could not be set aside to any one of the plaintiffs, or the defendant. That means that approximately $285,000.00 of property must be sold, which would leave a balance of about $215,000 in property that might be allocated to the eight heirs. . . .

"Out of that there is this one piece of rental property which is naturally the one that this defendant wants at $24,000 the Hellums warehouse building, and there is the $18,000 homestead, I think it is the old family home on North Topeka; the property that this defendant has requested to be set aside to him the $18,750.00 commercial block at Woodlawn and Lincoln is probably the best and most valuable vacant tract in the entire two additions, with possibly the exception of the lots—the 25 lots facing on Kellogg which have been appraised at $500 each except one at $750. This is property that is bounded by commercial enterprises on both sides, and in the opinion of the Commissioners and also in the opinion of this Court that is of very small value for residential purposes or property; that it ought to be zoned for commercial properties. Also I understand that the Planning Commission has refused to zone this for commercial purposes, which makes it of an entirely speculative value. That if it were rezoned, it, in the opinion of the Court, should be of considerably more value per lot than $500.00. On the other hand, those lots should not be divided, in the Court's opinion, by awarding 3 of them to each of the 8 parties, that would defeat the entire purpose of the valuation.

"The Court does not see how, even with the balance of the $215,000, which includes the homestead and the Hellums building, plus the vacant lots, how it can be equitably and properly divided among the 8. Therefore, the Court is going to deny the request that the Commissioners allocate the properties to the defendant; and also overrule the exceptions to the report of the Commissioners."

The defendant promptly appealed and moved this court for an order staying further proceedings in the trial court pending the appeal. This the court declined to do since it normally would hold the case up several months. The court had fixed January 15, 1953, as the last day for any one of the parties to file an election to take the property, or any part thereof, at its appraised value. On that date the plaintiff, Catherine Aleph Christman Reyburn, filed an election to take all of the property at its appraised value except the business property at 144 North Broadway, appraised at $65,000, the residence property at 1227 North Topeka, appraised at $18,000, and a described unplatted tract appraised at $12,000. Thereafter and on the same date the defendant filed an election to take the property he had stated to the court he would like to have, all of which was included in the election filed by Mrs. Reyburn. Plaintiffs then filed a motion for an order of sale for the tracts upon which two parties had elected to take and the three tracts no one had elected to take. Another application was then made to this court for an advancement of a hearing of the case on its merits and for an order staying further proceedings pending our disposition of the case. That motion was granted and the case was set for hearing on March 6, 1953, when it was heard by the court upon the abstracts, briefs and oral argument of counsel.

Counsel for appellant have briefed their argument under four divisions, one of which has four subdivisions. Counsel for appellee has followed the same outline. We find it unnecessary to treat these separately, and to do so would extend this opinion unduly. In the decision of this case the pertinent statutes (G. S. 1949) that need to be considered read as follows:

"After the interests of all the parties shall have been ascertained, the court shall make an order specifying the interests of the respective parties, and directing partition to be made accordingly. Upon making such order the court shall appoint three commissioners to make partition into the requisite number of shares. For good and sufficient reasons appearing to the court, the commissioners may be directed to allot particular portions to any one of the parties. (60-2105.)

"The commissioners shall make partition of the property among the parties according to their respective interests, if such partition can be made without manifest injury; but if such partition cannot be made, the commissioners shall make a valuation and appraisement of the property, valuing each tract separately where there are more than one. They shall make a report of their proceedings to the court forthwith. (60-2107.)

"Any party may file exceptions to the report of the commissioners, and the court may for good cause set aside such report and appoint other commissioners or refer the matter back to the same commissioners. (60-2108.)

"If partition cannot be made, and the property shall have been valued and appraised, any one or more of the parties may elect to take the same, or any separate tract, at the appraisement, and the court may direct the sheriff to make a deed to the party or parties so electing, on payment to the other parties of their proportion of the appraised value. (60-2110.)

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests." (60-2114.)

The real question in this case is whether the trial court erred in overruling defendant's motion for directions to the commissioners to set off certain property to defendant. The court had authority to do so "for good and sufficient reasons appearing to the court." Were such good and sufficient reasons shown? The trial court thought not, and we agree. It is clear from this record that the defendant was wanting particular property set off to him because he thought that property was more likely to increase in value than other property involved in the action if it were rezoned and if some of it could be handled so as to become income producing property. The trial court thought that somewhat speculative. However, assuming it to be true, the other parties to the action were as much entitled to the benefits resulting from that situation as the defendant. To cut them off from such benefits by first allotting specific property to defendant would have been improper.

Appellant's contention that if he had to buy the property instead of having it set aside to him would cost him some eleven or twelve thousand dollars in taxes, which he would not have to pay if the property were set off to him, caused this court to stay proceedings in the trial court and to advance this case for an early hearing. Now we are not impressed that it should be given serious consideration on this appeal for the reason, among others, that even after Mrs. Reyburn made her election to take a part of the property at the appraised value there was left, among other properties, the business property at 144 North Broadway, valued by the commissioners at $65,000, which he could have selected. At the worst that would have cost him about $2,000 in owelty, which would have been much less than his claimed loss in taxes. Neither are we seriously impressed with the sentimental reasons which he pressed upon the trial court, and repeated here, that he wanted this property because it was property his parents had accumulated over the years by hard work and thrift. Those sentiments normally cluster

mostly around the home, but defendant did not elect to take the home property at 1227 North Topeka although that was not included in the election of Mrs. Reyburn. When we analyze this entire record it seems clear that defendant's effort to have the particular property he referred to in his motions and testimony set off to him was because he thought he would gain thereby a financial advantage over the other parties to the action, and his own testimony tended to show that he would do so. The fact that he entertained that thought, with the possibility that it was well taken, justified the trial court in its ruling.

There is not much else to this lawsuit. Although the time to do so was short, capable and industrious counsel have filed briefs setting forth their views and have cited numerous authorities. We have considered all their arguments and examined their authorities, but we find it unnecessary to review them here in detail.

We find no error in the record. The judgment of the trial court is affirmed.